**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Jennifer M. Dubay, SBN 013204, dubayj@gtlaw.com
Attorneys for Defendant GMAC Mortgage, LLC,
formerly known as GMAC Mortgage Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

| | |
|---|---|
| A. Everette Adams, a single man,<br><br>　　　　　　　　　　　　Plaintiff,<br>v.<br>GMAC Mortgage Corporation, a<br>Pennsylvania corporation,<br>　　　　　　　　　　　　Defendant. | NO. CV06-223-TUC-CKJ<br><br>**GMAC MORTGAGE, LLC'S<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>(Oral Argument Requested) |

  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendant GMAC Mortgage, LLC, formerly known as GMAC Mortgage Corporation ("GMACM"), moves the Court for summary judgment on all Counts of the Complaint. There are no genuine issues of material fact and GMACM is entitled to judgment as a matter of law.

  GMACM supports this motion with the following Memorandum of Points and Authorities and separately filed Statement of Facts in support of Motion for Summary Judgment ("SOF"), which are incorporated herein by this reference.

PHX 327876442v2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

In or about January, 2004, Plaintiff A. Everette Adams ("Adams") refinanced the existing mortgage on his residence in Tucson, Arizona (the "Property") through GMAC Mortgage Corporation D/B/A ditech.com ("GMACM"). In this lawsuit, Adams has alleged a laundry list of federal and state claims against GMACM arising out of the establishment of an escrow account following Adams' failure to pay real estate taxes owed on the Property and the reporting of delinquencies in his loan payments due to his failure to pay amounts due GMACM as a result of the establishment of the escrow. As discussed below and supported by the evidence presented in GMACM's separately filed Statement of Facts, GMACM is entitled to summary judgment on each of Adams' claims.

## II. STANDARDS FOR GRANTING SUMMARY JUDGMENT.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the burden of showing that there is no genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986). Once the moving party meets this Rule 56 burden, the burden shifts to the resisting party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986). The resisting party cannot "rest on mere allegations or denials of his pleadings." *Id.* Rather, it must demonstrate the presence of factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

PHX 327876442v2

Summary judgment is not precluded simply because there remain some factual disputes. To defeat a motion for summary judgment, the resisting party must present facts in support of the issues on which it would bear the burden of proof at trial, there must be probative evidence of those facts, and the facts must be uncontroverted or at least create a genuine issue of material fact. *Id.* at 249-50, 106 S.Ct. at 2510-11. The moving party is entitled to judgment as a matter of law if the resisting party fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553-54. When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986)(quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 1592 (1968)).

### III. THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR GMACM.

#### A. Count I - Breach of Contract.

To prevail on his breach of contract claim, Adams must prove by a preponderance of the evidence: the existence of a contract, a material breach of the contract by GMACM, and damages naturally and directly resulting from the breach of the contract. *Graham v. Asbury,* 112 Ariz. 184, 540 P.2d 656 (1975). GMACM is entitled to summary judgment on this claim.

Adams was not able to point to a single provision of the Note or Deed of Trust he executed in connection with refinancing his mortgage that GMACM allegedly breached. (SOF 13.) Furthermore, there is no evidence that GMACM has not accurately applied all payments, interest charges, fees or reimbursements made with respect to Adams' account as set forth in GMACM's account history. (SOF 29-30.)

Adams, therefore, cannot prove an essential element of his contract claim, i.e., a breach that damaged him.

### B.   Count II - Real Estate Settlement Procedures Act ("RESPA").

Adams alleges GMACM is liable to him for violating RESPA, specifically 12 U.S.C. § 2605(e), relating to his submission of a "Qualified Written Request." **(See Complaint, pp. 11-12.)** Having admitted he cannot explain how he has been damaged by GMACM's alleged failure to comply with RESPA **(SOF 54)**, Adams' RESPA claim fails as a matter of law because he cannot prove an essential element of his claim. Adams also cannot prove other essential elements of his RESPA claim.

#### 1.   12 U.S.C. §2605(e)(1)(A).

Adams alleges GMACM violated 12 U.S.C. § 2605(e)(1)(A) "by failing to provide a written response acknowledging receipt of [Adams'] qualified written request no later than 20 days after receipt of the request." **(Complaint, p. 11, ¶ 3.)** The indisputable evidence contradicts this allegation.

With the assistance of his attorney, Adams sent his Qualified Written Request ("QWR") to GMACM on February 17, 2006. **(SOF 43.)** Adams' QWR specifically asks for information concerning the escrow account established for his Account. **(SOF 44.)** On March 7, 2006, **within twenty days of February 17, 2006**, GMACM responded to Adams' QWR. **(SOF 45-46.)** Adams admitted he received GMACM's response to his QWR shortly after March 7, 2006. **(SOF 47.)**

Thus, Adams cannot prove GMACM did not comply with the 20-day acknowledgement requirement of 12 U.S.C. § 2605(e)(1)(A).

#### 2.   12 U.S.C. § 2605(e)(2).

Adams also alleges GMACM violated 12 U.S.C. § 2605(e)(2)(A) "by failing to make appropriate corrections to [Adams'] account in response to the qualified written

-4-

request ... and failing to transmit written notice of such corrections [to Adams]" not later than sixty days after receipt of Adams' QWR. **(Complaint, p. 11, ¶ 4.)** He further alleges GMACM violated 12 U.S.C. § 2605(e)(2)(C) "by failing to provide the information requested or an explanation why the information sought was unavailable" not later than sixty days after receipt of Adams' QWR. **(Id., ¶ 5.)** He further alleges GMACM violated 12 U.S.C. § 2605(e)(2) "by refusing to cease collection efforts and foreclosure proceedings after receiving" Adams' QWR. **(Id.)** Summary judgment for GMACM is proper with respect to each of these allegations.

In the first instance, Adams misstates the law with respect to the action required by a loan servicer upon receipt of a qualified written request. *See* 12 U.S.C. § 2605(e)(2)(A)-(C). Within sixty days of receiving a qualified written request a loan servicer has three options available to it: (a) make appropriate corrections to the account and transmit written notice of the correction to the borrower; (b) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the service and (ii) the name and telephone number of an individual who can provide assistance to the borrower; **or** (c) after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) information requested by the borrower or an explanation of why the information cannot be obtained and (ii) the name and telephone number of an individual who can provide assistance to the borrower. Id. Thus, contrary to Adams' suggestion, if a loan servicer complies with one of these options, it has satisfied its legal obligations under § 2605(e)(2).

Here, GMACM met its obligations under § 2605(e)(2)(B). Adams' February 17, 2006 QWR specifically asks for information concerning the escrow account

established for his Account and explains why he believes the escrow account is improper. **(SOF 44.)** Adams admits GMACM's March 7th response to Adams' QWR provides a written explanation about why GMACM believed the escrow account to be proper and information about who to contact at ditech.com for assistance concerning the Account. **(SOF 46.)** Adams received GMACM's written response to his QWR shortly after March 7, 2006. **(SOF 47.)** Thus, GMACM complied with § 2605(e)(2)(B) within the sixty-day requirement.

Finally, there is no legal authority for the proposition that receipt of a qualified written request obligates a loan servicer to cease collection efforts or foreclosure proceedings. Thus, Adams' claim for the alleged violation of § 2605(e)(2) must be dismissed by summary judgment.

### 3. <u>12 U.S.C. § 2605(e)(3).</u>

Section 2605(e)(3) prohibits a loan servicer from reporting to credit reporting agencies within sixty days of receiving a qualified written request **<u>relating to a dispute regarding the borrower's overdue payments</u>**. This subsection of § 2605(e) is inapplicable to GMACM because Adams' QWR does not relate to a dispute regarding his payments. Rather, Adams' QWR specifically disputes the propriety of the establishment of a permanent escrow account for his Account. **(SOF 44.)** Thus, GMACM is entitled to summary judgment on this claim.

### C. <u>Count III -Federal and State Credit Reporting Acts.</u>

### 1. <u>Fair Credit Reporting Act.</u>

Adams has asserted two separate claims against GMACM for violation of 15 U.S.C. § 1681s-2(a) and (b) of the Fair Credit Reporting Act ("FCRA"), one for willful noncompliance pursuant to 15 U.S.C. § 1681n and one for negligent noncompliance pursuant to 15 U.S.C. § 1681o. GMACM is entitled to summary

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

PHX 327876442v2

judgment on these claims.

    (a)    **15 U.S.C. § 1681s-2(a).**

15 U.S.C. § 1681s-2(c) states that §§ 1681n and 1681o do not apply to § 1681s-2(a), i.e., the duty to provide accurate information to credit reporting agencies. Thus, the law is well-settled that consumers do not have a private right of action against furnishers for willfully or negligently providing false information to consumer reporting agencies. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

Here, Adams admitted the only basis for his FCRA claim is his belief that GMACM falsely reported to the credit reporting agencies that his payments on the Account were late. **(SOF 42.)** Since the alleged reporting of false information is the only basis of Adams' FCRA claim, GMACM is not liable for either willful or negligent violation of § 1681s-2(a).

    (b)    **15 U.S.C. § 1681s-2(b).**

The elements of a claim for violation of § 1681s-2(b) differ from those of § 1681s-2(a). Generally, furnishers of information are liable for violation of § 1681s-2(b) only if they fail to conduct a reasonable investigation of a consumer's dispute once notified of the dispute by a credit reporting agency. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d at 1059.

Thus, with respect to a claim pursuant to either § 1681n or §1681o, Adams at minimum must prove by a preponderance of the evidence the following elements: (1) Adams submitted a notice of dispute to a consumer reporting agency identifying specific information being disputed, explaining the basis for the dispute, and including all supporting documents; (2) GMACM received the notice of the dispute from the consumer reporting agency; (3) GMACM did not conduct an investigation

with respect to the disputed information; (4) GMACM did not review all relevant information provided by the consumer reporting agency; (5) GMACM did not report the results of the investigation to the consumer reporting agency; and (6) Adams' actual damages if he seeks to recover more than statutory damages. 15 U.S.C. §§ 1681i(a)(2), 1681n, 1681o and 1681s-2(b). Here, indisputable, material facts demonstrate Adams cannot prove each and every element of his claims for the alleged violation of § 1681s-2(b).

First, Adams was required to submit a notice of dispute to a consumer reporting agency identifying specific information being disputed, explaining the basis for the dispute, and including all supporting documents. 15 U.S.C. § 1681i(a)(2). Adams did not meet these requirements. Rather, on or about January 25, 2006, Adams sent only a "Dispute Form" concerning GMACM's reporting of his Account to the credit reporting agencies, TransUnion, Experian and Equifax. **(SOF 34.)** The Dispute Form is the only written dispute Adams sent to the credit reporting agencies regarding his Account. **(SOF 35.)** Adams did not send any information to the credit reporting agencies other than the Dispute Form. **(SOF 36.)**

Next, Adams must show that upon receiving notice of his dispute from a credit reporting agency, GMACM did not (a) conduct an investigation with respect to the disputed information, (b) review all relevant information provided by the consumer reporting agency, and (c) report the results of the investigation to the consumer reporting agency. § 1681s-2(b)(1)(A)-(C). Adams cannot meet these requirements.

Adams testified he could recall receiving a response to the Dispute Form from only Experian and not from Equifax or TransUnion. **(SOF 37.)** Adams received a report from Experian with the results of the investigation of his dispute concerning GMACM's reporting of his Account dated February 15, 2006. **(SOF 38.)** Experian's

Investigation Results report states:

> We completed investigating the items you disputed **with the sources of the information**.  Here are the results:
> 
> | Credit Items | Outcome |
> |---|---|
> | GMAC MORTGAGE CORP 65485.... | *Updated* |

**(SOF 39 (emphasis supplied).)**  Experian's Investigation Results report confirms Experian sent Adams' dispute to GMACM, that GMACM investigated the dispute and reported the results of its investigation to Experian.  This is consistent with GMACM's practice when it receives notice a customer is disputing the reporting of his account: GMACM reviews it, contacts the credit agencies, and if the reporting is wrong, corrects it.  **(SOF 40.)**  In contrast, Adams has produced no evidence, and has admitted he has no reason to believe, GMACM did not reasonably investigate his dispute with the reporting of his Account.  **(SOF 41.)**

### 2. Arizona Consumer Reporting Act.

Adams also has asserted a claim for relief under the Arizona Consumer Reporting Act, A.R.S. § 44-1691 *et seq.* ("ACRA"), which also must be dismissed by summary judgment in favor of GMACM.

First, Adams' ACRA claim is pre-empted by federal law.  Section 1681t(b)(1)(F) of FCRA states:

> No requirements or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to provisions in the Massachusetts and Annotated Laws and California Civil Code.].

15 U.S.C. § 1681t(b)(1)(F).  Thus, to the extent Adams seeks to hold GMACM liable under ACRA, his claim is barred as a matter of law by FCRA.

PHX 327876442v2

Next, Adams cannot prove each element necessary to prevail on an ACRA claim. The only provision of ACRA's liability statute arguably applicable to GMACM is A.R.S. § 44-1695(C), which states, in relevant part,

> Any consumer reporting agency, user of information or source of information that is grossly negligent in the use or preparation of a consumer report or who acts willfully and maliciously with intent to harm a consumer is liable to the consumer for actual damages, if any, punitive damages and attorney fees and court costs. ...

A.R.S. § 44-1695(C). The Complaint does not allege, and Adams has produced no evidence, GMACM "was grossly negligent in the use ... of a consumer report." (*See* **Complaint, Count III, pp. 12-13.**) Also, Adams has admitted he does not know if GMACM intended to cause him injury. **(SOF 57.)**

### D.  Count IV - Fair Debt Collection Practices Act ("FDCPA").

#### 1.  15 U.S.C. § 1692(e)(2), (5) and (6).

To prevail on his FDCPA claim under 15 U.S.C. § 1692(e), Adams must show (a) GMAMC is a debt collector, (b) that used false, deceptive, or misleading representations or means, (c) in connection with collection of any debt from Adams, (d) that actually damaged Adams. 15 U.S.C. §§ 1692(e) and 1692k.

With respect to § 1692(e)(2), Adams also must specifically prove GMACM falsely represented either the character, amount, or legal status of any debt, or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. 15 U.S.C. § 1692(e)(2).

With respect to § 1692(e)(5), Adams also must specifically prove GMACM threatened to take any action that cannot be legally taken or that was not intended to be taken. 15 U.S.C. § 1692(e)(5).

With respect to § 1692(e)(6), Adams also must specifically prove GMACM

-10-

falsely represented or implied that the sale, referral or other transfer of any interest in a debt would cause Adams to either lose any claim or defense to payment of the debt or become subject to any practice prohibited by the FDCPA. 15 U.S.C. § 1692(e)(6).

Here, Adams cannot prevail on his FDCPA claim under any provision of § 1692(e) because he cannot prove at least two essential elements of his claims. Specifically, Adams could not explain what "false, deceptive or misleading representations or means" GMACM used "in connection with collection of a debt from him." **(SOF 33.)** Also, Adams could not explain, and there is no evidence of, how GMACM "threatened to take any action that could not be legally taken or was not intended to be taken." **(Id.)** Also, Adams has not even alleged GMACM falsely represented or implied that the sale, referral or other transfer of any interest in a debt would cause Adams to either lose any claim or defense to payment of the debt or become subject to any practice prohibited by the FDCPA. *(See* **Complaint, p. 13.)**

2. <u>15 U.S.C. § 1692(f)(1).</u>

To prevail on his FDCPA claim under § 1692(f)(1), Adams must prove, among other things, that GMACM used unfair or unconscionable means to collect or attempt to collect a debt from him. 15 U.S.C. §§ 1692(f) and 1692k. Adams cannot prevail on this claim as a matter of law because Adams cannot explain, and there is no evidence of, what "unfair or unconscionable means" GMACM used to attempt to collect a debt from him. **(SOF 33.)**

3. <u>15 U.S.C. § 1692(g).</u>

(a) <u>§ 1692g(a).</u>

Adams claims GMACM violated § 1692g(a)(1) "by failing to accurately and state in communications to [him] 'the amount of the debt.'" GMACM is entitled to summary judgment on this claim.

-11-

PHX 327876442v2

To prevail on a claim under 15 U.S.C. § 1692g(a), Adams must prove GMACM did not send a written notice of his debt including, among other things, the amount of the debt and the name of the creditor to whom the debt was owed. Adams must also prove he was actually damaged by GMACM's failure to send the required notice. 15 U.S.C. §§ 1692g and 1692k.

Adams cannot prove all the elements of a claim under § 1692g(a). GMACM sent a proper notice to Adams on November 3, 2005. **(SOF 24.)** The November 3rd notice states the total amount of the debt to be $3,231.92. Adams has offered no evidence this was not the amount of his debt to GMACM as of November 3, 2005. Also, Adams has not offered any evidence of any damages he allegedly suffered as a result of GMACM's alleged failure to send the notice required by § 1692g(a).

(b)     **§ 1692g(b).**

To establish a violation of § 1692g(b), Adams must prove: (1) he notified GMACM in writing within thirty days after receiving a notice of debt from GMACM that the debt or a portion thereof was disputed, but that (2) GMACM did not cease collection of the debt or any portion thereof until it had verified the debt; and (3) Adams was actually damaged by GMACM's failure to cease collection of the debt. 15 U.S.C. §§ 1692g and 1692k.

GMACM is not liable on this claim. Adams did not dispute the debt in writing until December 29, 2005, more than two and a half months after GMACM firs sent him a notice of default on October 11, 2005. **(SOF 23, 31.)** Furthermore, Adams admitted he received no calls from GMACM after December 29, 2005 regarding his debt. **(SOF 32.)**

E.     **Count V - Intentional Infliction of Emotional Distress.**

As a threshold issue, "it is for the court to determine whether on the evidence

severe emotional distress can be found." *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 197, 650 P.2d 496, 499 (App. 1982)(citation omitted). When considering the tort of intentional infliction of emotional distress as it relates to debtor-creditor situations, "courts have uniformly insisted that the creditor's conduct be clearly and obviously excessive in order to sustain a cause of action." *Id.* "Liability has usually rested on a prolonged course of hounding by a variety of extreme methods." *Id. quoting* W. Prosser, The Law of Torts § 12 at 57 (4th ed. 1971). Thus, a debtor fails to state a claim for intentional infliction of emotional distress based on a creditor's collection efforts in the absence of evidence showing the creditor's conduct is clearly and obviously excessive.

In *Midas Muffler, supra*, the creditor had information that the debt it was trying to collect had already been paid. *Id.* at 196, 650 P.2d at 498. Nevertheless, the creditor continued to collect on the account by making phone calls to the debtor. *Id.* The evidence also showed that the creditor's representatives spoke in a "vicious and nasty manner" stating that the debtors were "no better than lying thieves or sponges" and that the creditor was going to "sue your asses" or "sue the hell out of you." *Id.* One of the debtors also testified the calls upset her, made her cry and that she had difficulty sleeping after some of the calls were made. *Id.*

The court held that the creditor's conduct was not excessive enough to sustain a cause of action of intentional infliction of emotional distress, stating,

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

*Id. quoting* RESTATEMENT (SECOND) OF TORTS § 46 com. d (1965).

PHX 327876442v2

Similarly, the evidence here is insufficient to state a claim for intentional infliction of emotional distress. Adams waited several weeks from receiving, on or about November 10, 2005, notice of options available to him to avoid foreclosure of the Property to send a letter disputing his debt. (SOF 23-24, 28, 31.) Adams did not receive any further calls from GMACM representatives once he sent his letter disputing the debt on December 29, 2005. (SOF 32.) Simply put, Adams cannot point to any "clearly and obviously excessive" conduct that warrants relief for intentional infliction of emotional distress.

### F.     Count VI -Negligence.

Adams' negligence claim essentially is a regurgitation of his contract and credit reporting act claims, and therefore, for the reasons discussed in sections III.A[1] and III. C, should be dismissed by summary judgment for GMACM.

With respect to the actual elements of a negligence claim, Adams must prove by a preponderance of the evidence: (1) GMACM owed a duty of care to Adams; (2) GMACM breached that duty of care by failing to exercise ordinary or reasonable care; and (3) GMACM's failure to use ordinary or reasonable care proximately and directly caused actual loss or damage to Adams. *Donnelly Const. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984).

GMACM is entitled to summary judgment on Adams' negligence claim because there is no evidence GMACM failed to exercise ordinary case in the handling of Adams' Account. For example, there is no evidence that GMACM has not accurately applied all payments, interest charges, fees or reimbursements made with

---

[1] To the extent Adams' negligence claim arises out of his contractual arrangement with GMACM, this claim is barred by the "economic loss" rule. *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995); *Carstens v. City of Phoenix*, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (App. 2003).

-14-

respect to Adams' Account as set forth in GMACM's account history. **(SOF 29-30.)** Furthermore, the Deed of Trust and Waiver of Escrow clearly permit GMACM to establish an escrow account in the event Adams failed to pay his real estate taxes and/or GMACM was required to advance funds to pay the taxes to protect its interest in the Property. **(SOF 16-22.)** There is no genuine dispute that GMACM did in fact advance funds to pay real estate taxes on the Property. **(SOF 29-30.)** The Deed of Trust also permits GMACM to return any payment if the payment is insufficient to bring the loan current. **(SOF 9.)** To the extent Adams failed to pay all amounts due on the loan, the Deed of Trust grants GMACM a power of sale to foreclose on the Property if Adams did not cure any default after notice was given. **(SOF 12.)**

### G.     Count VII - Defamation.

The FCRA pre-empts Adams' defamation claim unless he can prove by clear and convincing evidence that GMACM furnished false information to the credit reporting agencies "with malice or willful intent to injure" him. 15 U.S.C. § 1681h(e); *Spratt v. Northern Automotive Corp.*, 958 F.Supp. 456 (D.Ariz. 1996); *Morris v. Warner*, 160 Ariz. 55, 770 P.2d 359 (App. 1988). Adams has failed to produce any evidence sufficient to avoid pre-emption of his defamation claim. **(SOF 57.)**

### H.     Punitive Damages Claim.

Adams seeks punitive damages against GMACM only because (a) GMACM's representatives allegedly "wouldn't listen" to him when he called to complain about the handling of his Account **(SOF 55-56)**, and (b) GMACM sent notices concerning the Note and Deed of Trust to the Property Address rather than to his mailing address before November 9, 2005. **(SOF 58.)** Even assuming *arguendo* these allegations are true, Adams' punitive damages claims must be dismissed by summary judgment.

-15-

First, Adams may not receive punitive damages on his breach of contract and common law and statutory negligence claims. Absent a "special relationship," punitive damages may not be recovered for breach of contract *Rawlings v. Apodaca*, 151 Ariz. 149, 158, 726 P.2d 565, 579 (1986). There is no "special relationship" between a debtor and creditor, such as Adams and GMACM. *McAlister v. Citibank*, 171 Ariz. 207, 121, 829 P.2d 1253, 1258 (App. 1992). Furthermore, punitive damages may not be awarded for mere, or even gross, negligence. *Volz v. Coleman*, 155 Ariz. 567, 748 P.2d 1191 (1987).

Adams' request for punitive damages also cannot be sustained with respect to his remaining claims. Punitive damages are those damages awarded in excess of full compensation to the victim in order to punish the wrongdoer and to deter others from emulating his conduct. *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). Consequently, an extremely high burden of proof on parties who seek punitive damages. First, the legal elements of the claim are so exacting that punitive damages may be awarded only in cases involving "the most egregious of wrongs … consciously malicious or outrageous acts … aggravated and outrageous [conduct and] … conscious action of a reprehensible character." *Id.* at 331, 723 P.2d at 680. Second, these elements must be proven to the highest level of proof required in civil cases, i.e., clear and convincing evidence. *Id.* at 332, 723 P.2d at 681. This high degree of proof is essential to avoid diluting the deterrent effect of punitive damages. *Id.* at 331, 723 P.2d at 680.

The substantial hurdle Adams must overcome to achieve a punitive damages award is set forth in *Linthicum*. There, the Arizona Supreme Court said,

> To recover punitive damages something more is required over and above the "mere commission of a tort." The wrongdoer must be consciously aware of the wrongfulness or harmfulness of his conduct and yet

> continue to act in the same manner in a deliberate contravention to the rights of the victim. It is only when the wrongdoer should be consciously aware of the evil of his actions, of the spitefulness of his motives or that his conduct is so outrageous, oppressive and intolerable in that it creates a substantial risk of tremendous harm to others that the evil mind required for the imposition of punitive damages may be found.

*Id.* at 330, 723 P.2d at 679. Indeed, in Arizona, the punitive damages standard requires "something more" than **gross negligence**. *Rawlings v. Apodaca*, 151 Ariz. at 151, 726 P.2d at 577. The "something more" is an evil mind, which is satisfied by evidence "that the defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud" or that the defendant acted with "conscious and deliberate disregard of the interest and rights of others." *Gurule v. Illinois Mut. Life and Casualty Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987).

The conduct alleged by Adams simply does not rise to a level warranting an award of punitive damages. Having been unable to describe how GMACM either engaged in wrongful conduct motivated by spite or ill will, or pursued a course of conduct knowing it created a substantial risk of harm to him or others, Adams has admitted as much. **(SOF 57.)**

## IV. CONCLUSION.

For the foregoing reasons and each of them, GMACM requests that the Court grant GMACM summary judgment on Adams' Complaint with leave to file an application for attorney's fees and costs.

DATED this 11th day of July 2007.

GREENBERG TAURIG, LLP

By: *[signature]*
Jennifer M. Dubay
Attorneys for Defendant GMAC Mortgage, LLC

PHX 327876442v2

## CERTIFICATE OF SERVICE

☒  I hereby certify that on July 11th, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Joane E. Hallinan admin@joanehallinanlaw.com, jeh@joanehallinanlaw.com

☐  I hereby certify that on July ____, 2007, I served the attached document by United States Mail on the following:

                         s/Kathy McClement

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

PHX 327876442v2