**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Jennifer M. Dubay, SBN 013204, dubayj@gtlaw.com
Attorneys for Defendant GMAC Mortgage, LLC,
formerly known as GMAC Mortgage Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

| | |
|---|---|
| A. Everette Adams, a single man,<br><br>                                      Plaintiff,<br><br>        v.<br><br>GMAC Mortgage Corporation, a<br>Pennsylvania corporation,<br><br>                                      Defendant. | NO. CV06-223-TUC-CKJ<br><br>**DEFENDANT GMAC MORTGAGE, LLC'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Pursuant to LRCiv. Rule 56(c), Defendant GMAC Mortgage, LLC, formerly known as GMAC Mortgage Corporation ("GMACM"), submits the following Statement of Facts in support of its Motion for Summary Judgment.

## STATEMENT OF FACTS

### Material Facts Concerning Plaintiff's Breach of Contract Claim.

1.      In or about January 2004 Plaintiff A. Everette Adams ("Adams") sought to refinance the existing mortgage on his residence located at 7361 West Turtle Creek Place, Tucson, Arizona ("the Property") by obtaining a loan through GMACM (referred to as "Loan" or Account"). **(Complaint, ¶¶ 1-2.)**

PHX 327877365v1

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

2.     In connection with obtaining the Loan with GMACM, Adams executed a Note in the principal amount of $195,800.00 payable to GMAC Mortgage Corporation DBA ditech.com.  **(Ex. 1, Deposition of A. Everette Adams ("Adams Depo."), pp. 120:15-20, 122:3-4; Ex. 2, Note dated February 3, 2004.)**

3.     The Note identifies the "Property Address" as 7361 West Turtle Creek Place, Tucson, AZ 85746.  **(Ex. 1, Adams Depo., p. 12:4-8; Ex. 2, Note dated February 3, 2004.)**

4.     Paragraph 7 of the Note states the requirements for the giving of notices in connection with the Note as follows:

> 7.    **GIVING OF NOTICES**
>
> Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or mailing it by first class mail to me at the **Property Address** above or at a different address if I give the Note Holder a notice of my different address.
>
> Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**(Ex. 2, Note dated February 3, 2004 (emphasis supplied)).**

5.     The Note is secured by a Deed of Trust, which was recorded at Docket No. 12275 Page 1598 of the Official Records of the Pima County, Arizona Recorder.  **(Ex. 1, Adams Depo., pp. 116:24-118:2, 120:21-23; Ex. 3, Deed of Trust dated February 3, 2004.)**

6.     The Deed of Trust also defines the "Property Address" as 7361 Turtle Creek Place, Tucson, Arizona 85746.  **(Ex. 1, Adams Depo., pp. 118:4-10, 119:9-11; Ex. 3, Deed of Trust dated February 3, 2004, p. 3.)**

7.     Paragraph 15 of the Deed of Trust states the requirements for the giving of notices in connection with the Deed of Trust as follows:

-2-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1
2
3
4
5
6
7
8
9
10
11
12

    **15.   Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. ... **The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.** Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. **Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address** stated herein unless Lender has designated another address by notice to Borrower.   Any notice in connection with this Security Instrument shall not be deemed to have given to Lender until actually received by Lender. ...

13  **(Ex. 3, Deed of Trust dated February 3, 2004, p. 10 (emphasis supplied).)**

14      8.   Adams admitted under oath on May 31, 2007 that he **never** gave written

15 notice by first class mail to GMACM that it should send notices required to be given

16 him under the Note or Deed of Trust to an address different from the Property

17 Address. **(Ex. 1, Adams Depo., p. 122:19-24.)**

18     9.   With respect to the payment of principal, interest, escrow items,

19 prepayment charges and late charges, Paragraph 1 of the Deed of Trust permits

20 GMACM to return any payment or partial payment if the payment or partial payments

21 are insufficient to bring the Loan current.  **(Ex. 3, Deed of Trust dated February 3,**

22 **2004, p. 4.)**

23     10.   Paragraph 4 of the Deed of Trust requires Adams to pay all taxes,

24 assessments, charges, fines and impositions attributable to the Property which can

25 attain priority over the Deed of Trust. **(Ex. 3, Deed of Trust dated February 3,**

26

2004, pp. 5-6.)

11.     Paragraph 9 of the Deed of Trust permits GMACM to protect its interest in the Property and its rights under the Deed of Trust if Adams fails to perform the covenants and agreements contained in the Deed of Trust, including his obligation to pay taxes on the Property.  **(Ex. 3, Deed of Trust dated February 3, 2004, pp. 7-8.)**

12.     Paragraph 22 of the Deed of Trust grants GMACM a power of sale to foreclose on the Property if Adams does not cure any default after notice is given. **(Ex. 3, Deed of Trust dated February 3, 2004, p. 13.)**

13.     Adams cannot identify any provision of the Deed of Trust that is the basis of his breach of contract claim against GMACM.  **(Ex. 1, Adams Depo., pp. 116:24-117:25.)**

14.     Adams is not aware of any provision in the Note or Deed of Trust that requires GMACM to notify him that he has not paid his real estate taxes.  **(Ex. 1, Adams Depo., p. 80:5-13.)**

15.     Adams is not aware of any provision in the Note or Deed of Trust that requires GMACM to provide him notice before it pays real estate taxes on Adams' behalf. **(Ex. 1, Adams Depo., pp. 118:11-15.)**

16.     Adams agrees that if GMACM pays real estate taxes on Adams' behalf, the Note and Deed of Trust require him to reimburse GMACM for those advances. **(Ex. 1, Adams Depo., p. 118:16-20; Ex. 3, Deed of Trust dated February 3, 2004, pp. 5, 7.)**

17.     Adams agrees that any funds advanced for the purposes of paying taxes on the Property are secured by the Deed of Trust.  **(Ex. 1, Adams Depo., p. 118:21-24; Ex. 3, Deed of Trust dated February 3, 2004, p. 8.)**

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

18.     In connection with obtaining the Loan from GMACM, Adams executed a Waiver of Escrow.  **(Ex. 1, Adams Depo., p. 123:1-20; Ex. 4, Waiver of Escrow dated January 30, 2004.)**

19.     The Waiver of Escrow provides:

> The undersigned Borrower(s) agree(s) to be solely responsible for the timely payment of any and all property taxes, assessments, leasehold payments, ground rents, and hazard or property insurance premiums (including flood insurance premiums, if applicable), collectively referred to as the "Escrow Items," affecting the above referenced property.  Further, the Borrower(s) agree(s) to provide the Lender with written evidence of the payment of such items within two (2) weeks following your receipt of a written request from Lender.

**(Ex. 4, Waiver of Escrow dated January 30, 2004.)**

20.     The Waiver of Escrow also provides:

> Lender shall have the right to establish or reestablish an escrow account for the payment of the Escrow Items in accordance with the terms of your loan documents in the event that during the term of the mortgage loan:
> 1.     Borrower(s) fail(s) to pay any of the Escrow Items in a prompt and timely manner; ...
> 4.     It becomes necessary for Lender to advance funds to pay all or any portion of the Escrow Items.

**(Ex. 4, Waiver of Escrow dated January 30, 2004.)**

21.     Adams agrees the Waiver of Escrow permits GMACM to establish or reestablish an escrow account for the payment of Escrow Items, including real estate taxes, hazard insurance premiums and flood insurance premiums (a) in the event during the term of the Loan he failed to pay any of those items in a prompt and timely manner, or (b) it became necessary for GMACM to pay all or portions of those Escrow Items.  **(Ex. 1, Adams Depo., pp. 123:21-124:4, 124:13-17.)**

*PHX 327877365v1*

22.    The Waiver of Escrow does not require GMACM to provide Adams with advance notice before its pays any or all of the Escrow Items. **(Ex. 1, Adams Depo., pp. 124:19-125:6; Ex. 4, Waiver of Escrow dated January 30, 2004.)**

23.    On October 11, 2005, GMACM sent to Adams at his 7361 West Turtle Creek Place address a notice that he was in default on the Loan and advising him of loss mitigation options available to him as a result of his default, including a repayment plan and loan modification.    **(Ex. 5, Deposition of Scott Zeitz ("Zeitz Depo."), pp. 100:23-102:11; Exhibit 6, GMACM letter dated October 11, 2005.)**

24.    On November 3, 2005, GMACM sent to Adams at his 7361 West Turtle Creek Place address a notice that he was in default on the Loan. **(Ex. 5, Zeitz Depo., p. 102:18-23; Ex. 7, GMACM letter dated November 3, 2005.)**

25.    GMACM sent Adams an Escrow Analysis Statement, which was addressed to 7361 West Turtle Creek Place, on November 7, 2005, which notified Adams that GMACM was imposing an escrow account on his Account, including informing him of his new monthly payment. **(Ex. 5, Zeitz Depo., pp. 103:19-104:7; Ex. 8, Escrow Analysis Statement dated November 7, 2005.)**

26.    Adams notified GMACM by telephone on November 9, 2005 that GMACM should send notices to his Cortaro, Arizona post office box address. **(Ex. 1, Adams Depo., p. 102:3-6; Ex. 5, Zeitz Depo., p. 68:16-25.)**

27.    After November 9, 2005, GMACM sent all notices and other correspondence to Adams at his Cortaro, Arizona post office box address. **(Ex. 1, Adams Depo., p. 102:7-13.)**

28.    On November 10, 2005, GMACM sent to Adams at his Cortaro, Arizona post office address a letter advising him of loss mitigation options available to him as a result of his default on the Loan, including a repayment plan and loan

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-6-

1   modification.   **(Ex. 5, Zeitz Depo., pp. 107:16-108:20; Ex. 9, GMACM letter**

2   **dated November 10, 2005.)**

3      29.   It is the policy and practice of GMACM to maintain a history of each

4   account it either owns or services, which reflects every transaction related to the

5   account concerning all payments, interest charges, fees, advances, reimbursements

6   and the like.  A true and accurate copy of the history for Adams' Account maintained

7   by GMACM in the ordinary course of its business reflecting all transactions relating

8   to the Account from the first date of activity on May 13, 2004 through May 25, 2007

9   ("May 25, 2007 History") is attached as Exhibit A to the Affidavit of Scott Zeitz.

10  **(Ex. 10, Affidavit of Scott Zeitz dated July 10, 2007 ("Zeitz Aff."), ¶ 3.)**

11     30.   The transaction entries for the time frame of 5/13/04 to 11/14/05 on the

12  May 25, 2007 History are identical to the transaction entries for the same time frame

13  on the GMACM history for the Account dated December 1, 2005 sent to Adams,

14  which he provided to his attorney.  **(*Compare* Ex. 10, Zeitz Aff., Ex. A *with* Ex. 11,**

15  **Hallinan letter dated December 29, 2005, Ex. B.)**

16         **Material Facts Concerning Plaintiff's**
17         **Fair Debt Collection Practices Act Claim**

18     31.   On December 29, 2005, Adams' attorney sent a letter to Executive

19  Trustee Services disputing Adams' debt to GMACM.  **(Ex. 1, Adams Depo., pp.**

20  **133:18-134:6; Ex. 11, Hallinan letter dated December 29, 2005.)**

21     32.   Adams admits he did not receive any calls about the foreclosure of his

22  residence after December 29, 2005.  **(Ex. 1, Adams Depo., p.  97:19-22.)**

23     33.   As of his May 31, 2007 deposition, Adams

24  •  could not explain what "false, deceptive or misleading representations or

25     means" GMACM used in collection of a debt from him;

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

-7-

- could not explain how GMACM "threatened to take any action that could not be legally taken or was not intended to be taken"; and

- could not explain what "unfair or unconscionable means" GMACM used to attempt to collect a debt from him.

**(Ex. 1, Adams Depo., pp. 92:18-25, 93:17-94:10.)**

### Material Facts Concerning Plaintiff's Credit Reporting Act Claims.

34.    On or about January 25, 2006, Adams sent a "Dispute Form" concerning GMACM's reporting of his Account to the credit reporting agencies, TransUnion, Experian and Equifax. **(Ex. 1, Adams Depo., pp. 7:9-22, 10:23-11:10; Ex. 12, Dispute Form dated January 25, 2006.)**

35.    The Dispute Form is the only written dispute Adams sent to the credit reporting agencies regarding his Account. **(Ex. 1, Adams Depo., p. 13:4-7)**

36.    Adams did not send any information to the credit reporting agencies other than the Dispute Form. **(Ex. 1, Adams Depo., p. 13:1-3.)**

37.    Adams could recall receiving a response to the Dispute Form from only Experian and not from Equifax or TransUnion. **(Ex. 1, Adams Depo., p. 19:3-6.)**

38.    Adams received a report from Experian with the results of the investigation of his dispute concerning GMACM's reporting of his Account dated February 15, 2006.    **(Ex. 1, Adams Depo., p. 14:9-22; Ex. 13, Experian Investigation Results dated February 15, 2006.)**

39.    Experian's Investigation Results report states:

> We completed investigating the items you disputed with the sources of the information.  Here are the results:

| Credit Items | Outcome |
| --- | --- |
| GMAC MORTGAGE CORP | *Updated* |
| 65485.... | |

-8-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1  **(Ex 1, Adams Depo., p. 16:1-10; Ex. 13, Experian Investigation Results dated**
2  **February 15, 2006.)**

3         40.    This is consistent with GMACM's practice when it receives notice a
4  customer is disputing the reporting of his account: GMACM reviews it, contacts the
5  credit agencies, and if the reporting is wrong, corrects it.  **(Ex. 5, Zeitz Depo., pp.**
6  **28:4-29:15, 70:23-71:11.)**

7         41.    Adams has no reason to believe GMACM did not reasonably investigate
8  his dispute with the reporting of his Account when GMACM was notified of the
9  dispute by Experian. **(Ex. 1, Adams Depo., pp. 15:21-25, 65:10-14.)**

10        42.    Adams admitted the only basis for his Fair Credit Reporting Act claim
11  is his belief that GMACM falsely reported to the credit reporting agencies that his
12  payments on the Account were late. **(Ex. 1, Adams Depo., pp. 26:25-27:13.)**

13                    **Material Facts Concerning Plaintiff's**
14                 **Real Estate Settlement Procedures Act Claims.**

15        43.    With the assistance of his attorney, Adams sent a Qualified Written
16  Request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA") to
17  GMACM on February 17, 2006.  **(Ex. 1, Adams Depo., pp. 77:11-79:14; Ex. 14,**
18  **Adams "Qualified Written Request" dated February 17, 2006.)**

19        44.    Adams' QWR specifically asks for information concerning the escrow
20  account established for his Account and explains why he believes the escrow is
21  improper. **(Ex. 1, Adams Depo., p. 79:11-17; Ex. 14, Adams' "Qualified Written**
22  **Request" dated February 17, 2006.)**

23        45.    On March 7, 2006, within twenty days of February 17, 2006, GMACM
24  responded to Adams' QWR. **(Ex. 1, Adams Depo., pp. 85:12-86:9, 15-17; Ex. 15,**
25  **ditech.com (GMACM) letter dated March 7, 2006. )**

26

*PHX 327877365v1*

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

46.     GMACM's March 7th response to Adams' QWR provides a written explanation about why GMACM believed the escrow account to be proper and information about who to contact at ditech.com for assistance concerning the Account.  **(Ex. 1, Adams Depo., p. 86:18-24; Ex. 15, ditech.com (GMACM) letter dated March 7, 2006.)**

47.     Adams received GMACM's response to his QWR shortly after March 7, 2006.  **(Ex. 1, Adams Depo., pp. 85:14-86:2.)**

48.     Adams had a telephone conference with GMACM and ditech.com representatives on March 28, 2006 during which GMACM agreed to resolve Adams' concerns about his Loan.  Adams does not recall whether he advised his counsel that he would be having a conference call with GMACM and ditech.com representatives.  **(Ex. 1,  Adams Depo., pp. 103:2-104:11, 105:16-21.)**

49.     On March 29, 2006, within sixty days of Adams' QWR, GMACM notified Adams in writing that GMACM was reporting to credit repositories that it was making corrections to his account for the September 2005-January 2006 time period showing his payments paid on time.  **(Ex. 1, Adams Depo., p. 87:4-21; Ex. 16, ditech.com (GMACM) letter dated March 29, 2006.)**

50.     Also on March 29, 2006, within sixty days of Adams' QWR, GMACM notified Adams in writing that his future payments on the Account would consist of only principal and interest.  Adams understood when he received this notice that there would no longer be an escrow account and all future payments would consist only of principal and interest.  **(Ex. 1, Adams Depo., pp. 88:3-89:3; Ex. 17, ditech.com (GMACM) letter dated March 29, 2006.)**

-10-

51.     On March 31, 2006, Adams' Complaint in this matter was originally filed in Maricopa County, Arizona Superior Court by Adams' counsel.  (*See* **Complaint.**)

52.     On April 6, 2006, GMACM wrote to the Arizona Department of Financial Institutions a letter responding to a complaint against GMACM filed by Adams.  In the letter, GMACM stated,

> After the conference call, Dr. Adams was provided with the following information: an annual escrow analysis report, approval for the termination of his escrow account, refund of the funds maintained in that escrow account ($3070.73), a downward adjustment to Dr. Adams' monthly payment to reflect the removal of escrow requirements and an escrow waiver document for Dr. Adams' signature.  Finally, GMACM processed its request to amend Dr. Adams' credit.

Adams admitted he received a copy of this letter sometime around April 6, 2006 and that he did not dispute any of the information in the above-quoted paragraph.  (**Ex. 1, Adams Depo., pp. 103:2-23, 106:8-21;  Ex. 18, GMACM letter to Arizona Department of Financial Institutions dated April 6, 2006.**)

53.     On or about April 7, 2006, Adams negotiated ditech.com's refund check no. 10668594 in the amount of $3,070.73.  (**Ex. 1, Adams Depo., p. 89:4-16; Ex. 19, ditech.com Check No. 10668594 dated March 29, 2006.**)

54.     As of his May 31, 2007 deposition, Adams could not explain how he had been damaged by GMACM's alleged failure to comply with RESPA.  (**Ex. 1, Adams Depo., pp. 84:23-85:9.**)

### Material Facts Concerning Plaintiff's Intentional Infliction of Emotional Distress and Punitive Damages Claims.

55.     Adams testified under oath on May 31, 2007 as follows:

> Q.     Please tell me in your own words how GMAC's conduct towards you was extreme and outrageous.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

A.    It was extreme and outrageous because I tried to make contacts to GMAC's customer service and they wouldn't listen to me.  And they never returned my calls.  I sent several letters to GMAC's representative.  Her name is Rosa.  I don't know her last name, sent her several faxes.

I spoke with several people at GMAC and I can't remember the exact names, but they just don't want to listen to my plight.

Q.    Is there anything else in GMAC's conduct that you would describe as extreme and outrageous?

A.    Well, it was extreme and outrageous because they wouldn't listen to me.  They caused a problem and they wouldn't listen at the time to correct the problem.

Q.    Is that all that you would describe as extreme and outrageous?

MS. HALLINAN:   Form.

A.    Yes.

**(Ex. 1, Adams Depo., pp. 106:22-107:14.)**

56.    Adams also testified under oath on May 31, 2007 as follows:

Q.    Tell me how GMAC's conduct was intentional and reckless.

A.    Again, it was intentionally reckless because I have a dispute with GMAC and they never wanted to listen.

Q.    Is there anything else that you want to add to that response?

A.    No, nothing else.

**(Ex. 1, Adams Depo., pp. 107:23-108:4.)**

57.    Adams also testified under oath on May 31, 2007 as follows:

Q.    Please tell me how GMAC engaged in wrongful conduct motivated by spite or ill will.

A.    I don't know how to explain that.

Q.    Do the best you can.

A.    I think if GMAC representatives were more courteous, kindly, I think that would have solved the problem.

-12-

1        Q.     Do you believe that any GMAC representative intended to

2     cause you injury?

        A.     I don't know.

3        Q.     Could you please describe for me how GMAC pursued a

4     course of conduct knowing that it created a substantial risk of

      harm to you or others?

5        A.     I don't know.

**(Ex. 1, Adams Depo., pp. 108:11-109:1.)**

      58.   Adams also testified under oath on May 31, 2007 as follows:

        Q.     Do you believe that you should be awarded punitive
damages because GMAC sent notices to the property address
rather than to your mailing address?

        A.     Yes.

        Q.     Why do you believe that?

        A.     Because that was the incorrect mailing address.

        Q.     You think my client should be punished for that?

        A.     Of course.

**(Ex. 1, Adams Depo., p. 148:3-11.)**

     DATED this 11th day of July 2007.

                GREENBERG TRAURIG, LLP

                By: _____
                   Jennifer M. Dubay
                   Attorneys for Defendant GMAC
                   Mortgage, LLC

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

PHX 327877365v1

1
2
3

## CERTIFICATE OF SERVICE

4
☒    I hereby certify that on July <u>11th</u>, 2007, I electronically transmitted the
5         attached document to the Clerk's Office using the CM/ECF System for filing
         and transmittal of a Notice of Electronic Filing to the following CM/ECF
6         registrants: _
7
         Joane E. Hallinan admin@joanehallinanlaw.com, jeh@joanehallinanlaw.com
8

9
☐    I hereby certify that on July ____, 2007, I served the attached document by
10        United States Mail on the following:
11
12
13                                s/Kathy McClement
14
15
16
17
18
19
20
21
22
23
24
25
26

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

-14-